Tyson K. Hottinger (CA State Bar No. 253221)
E-Mail: thottinger@mabr.com
Michael J. Howell (*Pro Hac Vice Forthcoming*)
E-Mail: mhowell@mabr.com
Danny R. Barber (CA State Bar No. 325496)
E-Mail: dbarber@mabr.com
MASCHOFF BRENNAN
100 Spectrum Center Drive, Suite 1200
Irvine, California 92618
Telephone: (949) 202-1900
Facsimile: (949) 453-1104

Attorneys for Plaintiff Tara Jessop

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TARA JESSOP, an individual,

Plaintiff,

v.

JENNA MARIE RAMMELL, an individual; ANDREW JAMES RAMMELL, an individual,

Defendants.

Case No.

**COMPLAINT**

DEMAND FOR JURY TRIAL

Plaintiff Tara Jessop complains against defendants Jenna Marie Rammell and Andrew James Rammell for the causes of action alleged as follows:

## The Parties

1. Tara Jessop ("Jessop") is an individual residing in Ladera Ranch, Orange County, California, 92694.

2. Jenna Marie Rammell and Andrew James Rammell (collectively referred to as the "Rammells") are individuals residing at 2074 South 30 West, Orem, Utah, 84058.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. Jessop is a citizen of the State of California and the Rammells are citizens of the State of Utah. The damages suffered by Jessop due to the improper conduct of the Rammells exceed $75,000 exclusive of interest and costs.

4. This Court has personal jurisdiction over the Rammells based on their contact, relationships, and obligations to Jessop that occurred in this forum, and because they have purposefully directed activities related to those continuing relationships and obligations toward Jessop in this forum, including the activities complained of herein. The Rammells formed a business enterprise with Jessop, and shipped supplies and product to the forum in order to purposefully derive benefit from those interstate activities. Jessop's injuries arise out of or relate to those activities. The Rammells' conduct complained of herein creates a substantial connection with the forum state, and by creating continuing obligations between the Rammells and Jessop, the Rammells availed themselves of the privilege of conducting business within this forum.

5. The Court's exercise of personal jurisdiction over the Rammells is consistent with the Constitution of the United States, the Constitution of the State of California, and comports with traditional notions of fair play and substantial justice.

6. Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims contained herein occurred within this judicial district.

**Factual Background**

7. Jessop and the Rammells are co-owners of Oil Babes Shop LLC, a closely held Utah limited liability company (the "Company").

8. The Company is a member managed limited liability company organized under the laws of the state of Utah having a primary physical business address listed as 2074 South 30 West, Orem, Utah, 84058. The Company also maintained operations in Orange County, California at the relevant times mentioned herein.

9. This suit stems from the Rammells' violations of their fiduciary duties owed to Jessop, their wrongful termination of Jessop's access to the Company's records, their attempts to oust Jessop as a member of the Company, and their failure to pay Jessop proper distributions.

10. The Rammells' improper actions have caused actual past and ongoing harm and damages to Jessop.

*The Origin of Oil Babes Shop LLC*

11. Starting in or around 2016, Jessop and Jenna Rammell began exploring ways they could work together selling essential oil based products. They were friends that both had experience in that industry, and each had unique skills they thought would be beneficial to one another. Jessop and the Rammells were both residing in Southern California at that time.

12. Jessop and Jenna Rammell agreed to work together to manufacture and sell essential oil themed consumer products through an e-commerce, direct-to-consumer business model. The essential oil themed consumer products included items such as apparel, totes, and bags. This business arrangement eventually led to the formal creation of the Company and eventually the sale of essential oils.

13. The Company's formal registration with the state of Utah lists it as a member managed limited liability company which first started doing business on January 1, 2019. This registration listed Jessop and the Rammells as the sole members of the Company.

14. Jessop and Jenna Rammell each took on different roles for the Company. Jessop was responsible for business operations, including, for example, product logistics, manufacturing, design, sourcing, and order fulfilment. Jessop performed those duties primarily in Orange County. Jenna Rammell focused on marketing, sales, and providing raw materials to Jessop in Orange County for manufacturing of the essential oils and ultimately product fulfilment from the Company's Orange County location.

15. The online e-commerce platform utilized by the Company consisted of the domain "www.shopoilbabe.com," which was registered on July 23, 2016, as well as a Shopify account for backend support (oil-babe.myshopify.com) of the website.

*Oil Babes Shop LLC Begins Selling "Skin Bae"*

16. On February 14, 2019, Jessop emailed Jenna Rammell to discuss potential future products for the Company.

17. At that time, Jessop discussed with Jenna Rammell the results of several new product sourcing efforts, including a jade roller and a supplier Jessop had located that could source bottles for another upcoming product called "Skin Bae," which was an essential oil.

18. The Company launched the jade rollers and Skin Bae product through the e-commerce platform on or around May 16, 2019. The launch of this Skin Bae product was memorialized on the social media page controlled by Jenna Rammell. That social media post states "[f]or the first time ever: Skin Bae for sale. shopoilbabe.com! Pair it with our new white jade roller – limited quantities available." A depiction of the announcement is provided below:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /




19. Skin Bae was marketed as an "all natural good for you skin serum" and was created using a mix of essential oils.

20. The Rammells insisted that the Company purchase the essential oils used to formulate the Skin Bae product from Jenna Rammell, which the Rammells would ship to Jessop in Orange County.

21. Jenna Rammell insisted on this arrangement because she would receive kickbacks and rewards from Doterra (the manufacturer of the essential oils) for the Company's purchases.

*Oil Babes Shop LLC Is Formally Organized*

22. On October 1, 2019, the Company was formally organized as a Utah limited liability company.

23. Article II of the articles of organization filed with the State of Utah state that the Company is an "online sales outlet for natural skin care products."

24. Article VI of the articles of organization filed with the State of Utah list the Rammells and Jessop as the sole members of the Company.

25. On October 1, 2019, Jessop provided the Company's articles of organization to Wells Fargo Bank, where she opened a bank account on behalf of the Company.

*Skin Bae Drives Revenue*

26. After the launch of Skin Bae, Jessop continued with her management and responsibilities for manufacturing, packaging, and fulfilling all Skin Bae product orders.

27. The Company would physically create the Skin Bae product in this forum, and would do so by using essential oils provided to Jessop by the Rammells.

28. Jenna Rammell would purchase the essential oils from her personal Doterra account, ship those supplies to this forum, and obtain rewards from Doterra for those purchases.

29. Jessop was also responsible for overseeing and managing the packaging of the Skin Bae product, printing product labels, and shipping the finished product to end customers from the Company's location in this forum. Jessop was also responsible for customer service issues that were addressed in this forum.

30. In contrast, Jenna Rammell continued her role in marketing the Skin Bae product on behalf of the Company, and would encourage customers to buy Skin Bae through the Company's website, www.shopoilbabe.com, using various marketing channels.

31. On February 20, 2020, Jessop hired an accountant to compile financials and prepare tax filings on behalf of the Company. Upon completion of the financials and tax filings, Jessop and the Rammells split the net income evenly between Jessop and the Rammells and made a distribution. The K-1s distributed by the Company identified Jenna Rammell as a 49.5% owner, Jessop as a 49.5% owner, and Andrew Rammell as a 1% owner.

*The Rammells Force Jessop Out of the Company*

32. As the sales of Skin Bae through the Company's e-commerce platform grew quickly and turned into a substantial amount of revenue, the Rammells embarked on a plot to cut-off Jessop and improperly force her out of the Company.

33. This plot was designed to allow the Rammells to improperly take control of the Company's assets, revenue, and misappropriate them for their personal gain at the expense of Jessop.

34. In February of 2020, following a successful sale for Skin Bae products on the Company e-commerce platform, the Rammells started refusing to send supplies to Jessop that were necessary for Jessop to fulfill Skin Bae orders.

35. On March 5, 2020, Andrew Rammell wrote Jessop to discuss, among other things, the creation of a formal operating agreement for the Company. At that time, Andrew Rammell admitted that:

> "Shop Oil Babe LLC owns a shopify account, website and its customer base. It also owns an Instagram account and its followers. Tara Jessop owns 49.5% of Shop Oil Babe LLC and is responsible for fulfillment and shipping of products sold through www.shopoilbabe.com. Jenna Rammell owns 49.5% of Shop Oil Babe LLC and is responsible for marketing and advertising. Andrew Rammell owns 1% of Shop Oil Babe LLC and responsible [sic] for sourcing and inventory management. All profits from sales generated through www.shopoilbabe.com will be distributed to its partners based on ownership after sales and income taxes, product costs, shipping costs and operational costs are paid."

36. Following Andrew Rammell's March 5, 2020 email, the Rammells continued to refuse to send supplies to Jessop that were necessary for Jessop to fulfill Skin Bae orders. The Rammells also stopped promoting the Skin Bae product until they could oust Jessop as a member.

37. At the time, Jenna Rammell told Jessop that the delay in sending supplies was to avoid potential legal issues. This turned out to be a lie and a delay tactic to provide the Rammells time to continue implementing their scheme to force Jessop out of the Company.

38. On July 12, 2020, the Rammells took additional steps in their scheme. Andrew Rammell issued an ultimatum to Jessop regarding the future of the Company (1) Jessop could purchase the Rammells 51.5% share of the Company and continue to sell Skin Bae under the terms of a licensing agreement (while the Rammells directly competed with the Company by selling Skin Bae through other outlets in violation of their fiduciary duties), (2) Jessop could agree to renegotiated ownership terms proposed by Andrew Rammell which would lower her ownership stake in the Company, or (3) the Company could be kept as is, but the Rammells would convert the Company's business to another entity and sell Skin Bae through other outlets—again, which would be a violation of their fiduciary duties.

39. On July 13, 2020, Jenna Rammell confirmed that she intentionally failed to send necessary supplies to Jessop, and instead had diverted product fulfilment to another location in Utah without Jessop's permission or knowledge.

40. In that same July 13, 2020 message, Jenna Rammell again pushed Jessop to consider selling her ownership stake in the Company, stating "we'd be happy to discuss buying you out…but you're going to have to determine what you think that is worth…."

41. On July 15, 2020, given Jenna Rammell's admission that she was intentionally failing to send supplies to Jessop, Ryan Jessop (the spouse of Jessop) began exploring potential paths forward since the Rammells were beginning to increase their efforts and pressure to push Jessop out of the company.

42. At that time, Ryan Jessop proposed a purchase price for Jessop's membership interest based on past revenue and projected future revenues. Ryan Jessop was doing so as a means to try to find a resolution that Jessop and the Rammells could agree upon; he was not acting as (or authorized to act as) Jessop's agent.

43. That same day, Andrew Rammell responded to Ryan Jessop's proposal and confirmed that Jenna Rammell had improperly diverted product fulfillment and that the fulfillment was now being performed by Andrew Rammell's mother.

44. Despite this, Andrew Rammell confirmed that even though the parties had "verbally agreed" that Jessop was to perform fulfillment for the Company so that the Rammells could "focus on other things…it didn't make sense to stay in a 50/50 type partnership" when Jessop was no longer doing fulfillment.

45. Andrew Rammell then confirmed that the Rammells' goal the entire time was to compete directly with the Company and to funnel its customers away it to business entities owned by the Rammells.

46. Specifically, Andrew Rammell stated that the "main conclusion we've come to is that Shop Oil Babe and the Daily Essential Co. don't mix that well as constituted…It was naïve of us to think we could grow both brands simultaneously without them overlapping…Because Tara [Jessop] is a partner on only the Shop Oil Babe side it feels like she is losing when people are funneled to the [Daily Essential Co.] community which isn't fair to her or to us since that has always been the original goal."

47. Andrew Rammell then offered $2,500 dollars for Jessop's membership interest in the Company. On July 16, 2020, Andrew Rammell followed up this communication stating "I know you guys are totally willing to find ways to add value, but there won't be an immediate pressing need [for you] that would warrant a percentage of ownership moving forward. I don't mean at all to sound like a punk in saying that…." Andrew Rammell then concluded by stating "if you insist on a buyout you'll have to let me know what that number looks like to you guys."

48. On July 17, 2020, Ryan Jessop responded to Andrew Rammell and stated "I previously sent over what a payout should look like based on the value of the company as it stands today with data to back it up. Any third-party valuation company would do the same thing and come up with a number probably higher than mine…."

49. Andrew Rammell responded to Ryan Jessop's July 17, 2020 communication by stating "[w]e have other LLC's, websites and bank accounts so we don't have any reason to pay you some ridiculous number for the Shop Oil Babe site…We've been very clear about how appreciative we are for your willingness to get all that work done and

bust your butts during crazy hours of the night to get orders processed and fulfilled…If you expect us to stay in a 50/50 partnership and pay you half plus split the cost of third party fulfillment while your guys brainstorm ideas on how to add value besides fulfillment then you're out of you're damn mind."

50. Andrew Rammell then stated that Jessop could accept all the funds in the Company bank account as of 1/31/20 as payment for her Jessop's membership interest. He concluded the offer with the statement "[l]et me know how much of that…you want and I'll send it over. I'm going to leave [the Company] website up until the end of July…I'll shut the site down officially August 1st. I'll have our book keeper finish shop oil babe numbers and we can get income taxes wrapped up…." Ryan Jessop did not respond to that offer.

51. After Ryan Jessop did not respond, Andrew Rammell texted Ryan Jessop. At that time, he stated "this was my most recent email I just sent. Can we please get this wrapped up right now?" Ryan Jessop responded by asking why Andrew Rammell proposed settling the ending balance in the bank account as of 1/31/20, as the business was still in operation. Ryan Jessop expressed his disagreement with that date because the Company conducted a sale in February of 2020 in which the company was "shipping out orders like 300 at a time."

52. In response, Andrew Rammell then proposed paying Jessop 49.5% of the funds in the Company's Wells Fargo bank account as of February 2020. To convince Jessop that he was intent on dissolving the Company, Andrew Rammell then represented that all three members of the Company would need to "sign a certificate of dissolution."

53. Given that Jessop was entitled to 49.5% of the profit generated by the Company, Ryan Jessop indicated he would receive the payments which were due and owing to Jessop by virtue of her membership in the Company.

54. Andrew Rammell then represented to Ryan Jessop and Tara Jessop that he intended to file a document entitled "Dissolve" on 8/01/20 with the State of Utah, and that only one member of the company needed to sign it. Jessop never consented to filing

the document entitled “Dissolve” with the State of Utah. That document was an “Articles of Dissolution” form that was promulgated by the State of Utah’s Department of Commerce. Andrew Rammell had filled in the form to indicate that the purported date of the Company’s dissolution was to be 8/1/2020, and that the total number of votes cast for dissolution was 3 against 0.

55. Andrew Rammell paid Jessop 49.5% of the funds in the Company’s Wells Fargo bank account as of February 2020. However, after 49.5% of the funds in the Company’s Wells Fargo bank account as of February 2020 were paid to Jessop, the Rammells ceased paying Jessop her share of the Company’s profit.

*The Rammells Misappropriate Oil Babes Shop LLC’s Assets*

56. In August of 2020, the Rammells made good on their intended course of action to convert the Company’s assets and improperly transfer them to the Rammell’s “other LLC’s, websites and bank accounts.”

57. The Rammells never dissolved the Company as they represented they would and never filed the document entitled “Dissolve” with the State of Utah. The Company is currently an active company according to the State of Utah and it is actively selling products and generating revenue and profits.

58. Instead of dissolving the Company, the Rammells improperly removed Jessop as member with the state of Utah on August 21, 2020 without Jessop’s knowledge or permission.

59. In order to conceal their improper actions, the Rammells cut-off Jessop’s access to the back-end of the www.shopoilbabes.com website and the Shopify account oil-babe.myshopify.com, even though she has a right to access all that information as a member of the Company.

60. The Rammells then continued with their intentional misappropriation and conversion of Company assets and property for their own personal gain and to the detriment of Jessop’s membership interest. They believed by cutting-off Jessop’s access to Company records and accounts that they could conceal the fact that they did not take

down the Company's website and that the Company continued to generate significant sales and revenues.

61. For example, the Rammells misappropriated the www.shopoilbabes.com website by redirecting it to The Daily Essential Co., which is currently selling Skin Bae products. Skin Bae products were first offered by the Company and the Rammells have a fiduciary duty not to compete with the Company and divert Company opportunities to the detriment of Jessop's membership interest.

62. An example of The Daily Essential Co. using the www.shopoilbabe.com website as a redirect link is provided below:




63. The Rammells also misappropriated the Company's Shopify account "oil-babe.myshopify.com," and are currently utilizing that Shopify account to sell Skin Bae and Skin Bae related products on The Daily Essential Co.

64. An example of the use of the Company's Shopify account on The Daily Essential Co. website is provided below:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

65. The Daily Essential Co.'s website also contains a claim of copyright to the contents of the website, with the copyright claim reading "Copyright © 2020 Oil Babe."

66. The Rammells also directly compete with the Company by selling a "DIY Skin Bae Kit" on The Daily Essential Co website.

67. When a website visitor attempts to buy the "DIY Skin Bae Kit" on The Daily Essential Co website, the visitor is not directed to the Company to finalize the sale. Instead, the visitor is redirected to the personal Doterra page of Jenna Rammell. On that Doterra page, the visitor can buy the ingredients to manufacture Skin Bae directly from Jenna Rammell, which results in her receiving kickbacks from Doterra for the sale of those competing products, all to the detriment of Jessop's membership interest in the Company.

*__The Rammells Improper Distributions__*

68. The Rammells have improperly distributed Company profits from the Company's bank account opened by Jessop to their personal bank accounts and related business accounts without making pro rata distributions to Jessop.

69. Between July 17, 2020 and August 8, 2020, hundreds of thousands of dollars were distributed from the Company's bank account to Andrew Rammell's personal savings account.

70. Between November 19, 2020 and December 14, 2020, tens of thousands of dollars were distributed from the Company's bank account to AJQ Security Services, LLC, an entity owned by Andrew Rammell.

71. Between December 7, 2020 and December 24, 2020, tens of thousands of dollars were distributed from the Company's bank account to Jenna Rammell's personal bank account.

72. In total, the Rammell's have made hundreds of thousands of dollars in distributions from the Company since July 17, 2020. And this is based on the very limited access of bank account information that Jessop still maintains. There could be significantly more money that the Rammells have converted to their own personal use and benefit.

73. Jessop has not received any distributions after August 17, 2020, despite being a 49.5% owner of the Company and being entitled to distributions in equal shares under § 48-3a-404 of the Revised Utah Limited Liability Company Act.

74. The Rammells have also continued using the Company's American Express credit card to pay several suspect bills directly from the Company's bank account. These suspect bills include the purchase of essential oils from Jenna Rammell's personal Doterra account that are used to create the Skin Bae product, and on information and belief, the payment of the Rammells' personal expenses. The Rammells have also improperly retained the associated American Express reward points generated from the continued use of the Company's American Express credit card.

## First Cause of Action

(Breach of Fiduciary Duties)

(Against the Rammells)

75. Jessop incorporates by reference the preceding paragraphs as though fully set forth herein.

/ / /

/ / /

76. As members of the Company, the Rammells owed and continue to owe fiduciary duties to the Company and Jessop pursuant to § 48-3a-409 of the Revised Utah Limited Liability Company Act.

77. The Rammells breached their fiduciary duties by, among other things, (1) wrongfully preventing Jessop from accessing Company assets and records including the back-end of the www.shopoilbabe.com website and the related Shopify account, (2) wrongfully removing Jessop as a member from the Company's registration, (3) misappropriating the Company's assets by wrongfully incorporating them into business entities owned by the Rammells including The Daily Essential Co., (4) using the wrongfully misappropriated Company assets to directly compete with and take the opportunities from the Company and to obtain a benefit therefrom, (5) directly competing with and taking the opportunities of the Company by selling Skin Bae directly to consumers and thereby depriving the Company of profits it would have thereby realized, and (6) making improper distributions from the Company's bank account in violation of § 48-3a-404 of the Revised Utah Limited Liability Company Act.

78. The Rammells' conduct caused Jessop to suffer harm in an amount that will be proven at trial, but that exceeds $75,000, including but not limited to, (1) monies that should have been distributed to Jessop and (2) harm that has been incurred by Jessop through the inability to access the Company's records.

79. But for the Rammells' misconduct, that harm would not have been suffered by Jessop.

80. Jessop is entitled to proceed directly against the Rammells because it will not unfairly expose the Company or the Rammells to a multiplicity of actions, materially prejudice the interests of creditors of the Company, or interfere with a fair distribution of the recovery among all interested persons.

/ / /

/ / /

/ / /

**Second Cause of Action**

(Conversion)

(Against All Defendants)

81. Jessop incorporates by reference the preceding paragraphs as though fully set forth herein.

82. Jessop is a member of the Company and has ownership rights and the right to possess assets of the Company, including the www.shopoilbabe.com and oil-babe.myshopify.com Shopify account.

83. The Rammells exercised improper dominion and control over the assets of the Company, and prevented Jessop from access to those assets, which is inconsistent with Jessop's membership rights in the Company. Jessop did not consent to the Rammells' improper control.

84. The Rammells have harmed Jessop in an amount that will be proven at trial, but that exceeds $75,000, by their improper exercise of dominion and control over the Company's assets that is inconsistent with the Jessop's ownership rights.

**Third Cause of Action**

(Accounting)

(Against the Rammells)

85. Jessop incorporates by reference the preceding paragraphs as though fully set forth herein.

86. Jessop has formally demanded an accounting under § 48-3A-410 of the Revised Utah Limited Liability Company Act.

87. An accounting is necessary to, among other things, determine the full scope of improper distributions made to the Rammells, including improper expenses paid by the Rammells, as well as the scope of distributions that were improperly denied to Jessop.

88. An accounting is also necessary to evaluate the financial condition of the Company and its activities, affairs, and financial condition; including, for example, the volume and amount of sales generated by the Company.

89. The Rammells have refused to provide Jessop the information she is entitled to under § 48-3A-410 of the Revised Utah Limited Liability Company Act.

90. The amount of money due from the Rammells to Jessop is unknown and cannot be ascertained without an accounting.

91. Jessop is entitled to an accounting of the Company to ensure that she receives her proper share of distributions of the Company's profits.

**Fourth Cause of Action**

(Fraud)

(Against Andrew Rammell)

92. Andrew Rammell represented to Jessop that he would dissolve the Company, and that he would shut down its operations.

93. Andrew Rammell's representations concerned a presently existing material fact regarding the ownership and operation of the Company, as well as the future use of the Company's assets, which were false. Andrew Rammell knew the representations were false, and made the representations for the purpose of inducing Jessop to believe that the Company was dissolved.

94. Jessop, acting reasonably in ignorance of the representations falsity, relied upon the representations and believed that the Company was dissolved and that she should no longer expect to receive her 49.5% of the Company's profits.

95. Jessop has been harmed in an amount that will be proven at trial in excess of $75,000 by the representations and her reliance on those representations. As one example, Jessop has not received her 49.5% share of the Company's profits due to Andrew Rammell's fraud.

**Prayer for Relief**

Wherefore, Jessop prays for judgment as follows:

A. Judgment against the Rammells for breach of fiduciary duties;

B. Judgment against the Rammells for conversion;

C. Judgement and an order for an accounting of the Company's revenues, profits, expenses, and transfers;

D. Damages as authorized under the law arising from the foregoing;

E. Punitive damages;

F. Attorney fees and costs; and

G. Such further legal and equitable relief as the Court deems appropriate.

**Demand for Jury Trial**

Jessop demands a trial by jury on all claims and issues so triable.

DATED: February 17, 2021

Respectfully submitted,

MASCHOFF BRENNAN

By: /s/ Tyson Hottinger

Tyson Hottinger

Attorneys for Plaintiff Tara Jessop